ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "**Agreement**") is made as of this ___ day of December, 2009 (the "**Effective Date**"), by and among (i) Classic Sleep Products, Inc. ("**Seller**") and Classic Brands, LLC ("**Buyer**"). Seller and Buyer are sometimes referred to as the "**Parties**."

RECITALS

**WHEREAS**, Seller is in the business of designing, manufacturing, marketing, and selling high quality mattresses and other bedding products (the "**Business**");

**WHEREAS**, Seller has filed a voluntary chapter 11 petition commencing a case (the "**Chapter 11 Case**") in the United States Bankruptcy Court for the District of Maryland (the "**Bankruptcy Court**") on January [___], 2009;

**WHEREAS**, Buyer desires to purchase on an expedited basis certain of the assets of Seller related to or used by Seller in connection with the Business, and Seller desires to sell, assign and transfer to Buyer the Acquired Assets (as defined below) as more particularly described herein and in accordance with Sections 105 and 363 of the United States Bankruptcy Code (the "**Bankruptcy Code**");

**WHEREAS**, the Parties agree that time is of the essence in connection with the sale of the Acquired Assets; and

**WHEREAS**, the Acquired Assets will be sold free and clear of all liens and Pre-Closing Liabilities pursuant to an order of the Bankruptcy Court approving such sale under Sections 105 and 363 of the Bankruptcy Code.

**NOW, THEREFORE**, for and in consideration of the foregoing and their mutual covenants and agreements set forth below, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

SECTION 1.  DEFINITIONS.

In addition to the terms defined elsewhere in this Agreement, the following terms shall have the respective meanings specified below:

"**Agreement**" shall have the meaning set forth in the preamble.

"**Bankruptcy Code**" shall have the meaning set forth in the recitals.

"**Bankruptcy Court**" shall have the meaning set forth in the recitals.

"**Business**" shall have the meaning set forth in the recitals.

"**Business Day**" means any day other than a Saturday, Sunday or other day on which commercial banks in Washington, DC or are authorized or required by Law to be closed.

"**Buyer**" shall have the meaning set forth in the preamble.

"**Chapter 11 Case**" shall have the meaning set forth in the recitals.

"**CIT**" means The CIT Group/Commercial Services, Inc., a New York corporation.

"**Claim**" means (i) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or (ii) a right to an equitable remedy, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"**Code**" means the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder.

"**Consent**" means any approval, consent, ratification, waiver or other authorization.

"**Contract**" means any agreement, contract, obligation, license, sublicense, lease, sublease, guarantee, note, letter of credit, commitment, arrangement, understanding, promise or other undertaking, whether written or oral and whether express or implied.

"**Effective Date**" shall have the meaning set forth in the preamble.

"**Encumbrance**" means (a) any encumbrance, mortgage, pledge, lien, charge, security interest or other claim of any kind upon any property or assets of any character, or upon the income or profits therefrom; or (b) any acquisition of or agreement to have an option to purchase any property or assets upon conditional sale or other title retention agreement, device or arrangement (including a capitalized lease); or (c) any sale, assignment, pledge or other transfer, in each case for security of any accounts, general intangibles, or chattel paper, with or without recourse.

"**Governmental Authority**" means any agency, board, bureau, executive, court, commission, department, legislature, tribunal, instrumentality or administration of the United States, a foreign country, or any state, provincial, territorial, municipal, county, local or other governmental entity in the United States or any foreign country.

"**Law**" means any law, statute, regulation, rule, code, ordinance or court order enacted, adopted, issued or promulgated by any Governmental Authority.

"**Liability**" or "**Liabilities**" means any and all liabilities, obligations, judgments, damages, charges, encumbrances, costs, debts, indebtedness and other rights exercisable by third parties of any and every kind and nature whatsoever, absolute or contingent, liquidated or unliquidated, in Law, equity or otherwise.

"**Order**" means any award, decision, injunction, judgment, order, ruling, subpoena, or verdict entered, issued, made, or rendered by any court, administrative agency, or other Governmental Body or by any arbitrator."**Parties**" shall have the meaning set forth in the preamble.

"**Permit**" means any Consent, permit, license, certificate, registration or other form of permission issued, granted, given or otherwise made available.

"**Permitted Encumbrance**" means any (i) Encumbrance to secure taxes, assessments and other government charges or claims for labor, material or supplies in respect of obligations not overdue (other than any such overdue taxes, levies, claims, assessments or charges, to the extent the payment therefor shall not at the time be required to be made in accordance with applicable laws); (ii) deposit or pledge made in connection with, or to secure payment of, worker's compensation, unemployment insurance, old age pensions or other social security obligations; and (iii) Encumbrance of carriers, warehousemen, mechanics and materialmen, and other like liens, in existence less than thirty (30) days from the date of creation thereof or in respect of obligations not overdue or, if overdue, all such liens that Seller is contesting in good faith by appropriate proceedings which prevent enforcement of the Encumbrance.

"**Seller**" shall have the meaning set forth in the preamble.

"**Transferred Employees**" mean the employees of Seller who have accepted employment with Buyer contingent upon the Closing.

SECTION 2.   SALE OF ASSETS.

(a)   <u>Acquired Assets.</u>   At the Closing, pursuant to Sections 105 and 363 of the Bankruptcy Code and on the terms and subject to the conditions precedent of this Agreement, Seller will sell, assign and transfer to Buyer[1] free and clear of all Encumbrances of any kind or nature whatsoever (except for the Permitted Encumbrances), and Buyer will purchase free and clear of all Encumbrances of any kind or nature whatsoever (except for the Permitted Encumbrances), all of Seller's rights, title and interest in all assets of Seller (and all rights of Seller in respect of such assets) including, without limitation, all of the following (collectively, the "**Acquired Assets**"):

(i)   <u>Products.</u>   All of Seller's rights in any products developed, manufactured or sold by Seller;

(ii)   <u>Customers.</u>   All of Seller's rights in relationships or arrangements of Seller with its customers (the "**Customers**") for the provision of products or services, all customer and supplier lists and information, including contact persons and contact information, and all records and databases relating to Seller's customers;

---

[1] Buyer is a wholly owned subsidiary of JMX Capital Partners, LLC, a Delaware limited liability company ("Parent"). The majority interest in Parent is owned by Michael Zippelli, the current President and CEO of Seller. Mr. Zippelli is also a Manager of Parent, and the President and CEO of Parent and of Buyer. The minority interest in Parent is held by Xiong Yu, an affiliate of Wonderlink, Int., Ltd., the Seller's largest unsecured creditor and a vendor of the Seller.

3

(iii) <u>Intellectual Property</u>. All of Seller's rights in any intellectual property owned or licensed by Seller and used in the Business or relating to any Acquired Assets (collectively, the "**Intellectual Property**"), including without limitation:

(1) all trademarks, service marks, trade names, doing business names, slogans, logos, trade dress, internet domain names, telephone numbers (and related directory listings), and internet sites and other similar designations of source or origin, together with all goodwill, registrations and applications related to the foregoing of, used in the Business or relating to any Acquired Assets (the "**Marks**"); and

(2) all trade secrets and other confidential information, know-how, proprietary processes, products, formulae, algorithms, models, and methodologies; patents, utility, models and industrial design registrations or applications (including without limitation any continuations, divisionals, continuations-in-part, provisionals, renewals, reissues, re-examinations and applications for any of the foregoing); copyrights and copyrightable subject matter (including without limitation any registration and applications for any of the foregoing); and computer programs (whether in source code, object code or other form) (used in the Business or relating to any Acquired Assets;

(iv) <u>Inventory</u>. All inventories of Seller, including without limitation, raw materials, work in progress, finished products and goods, packaging and labels, spare and replacement parts, office and other supplies, in each case both owned by Seller or in its possession, as well as those in transit to Seller from, or held for the benefit of Seller by, any third party manufacturer, supplier, dealer or other person (collectively, the "**Inventory**");

(v) <u>Equipment</u>. All personal property (other than Inventory) and fixtures of Seller including without limitation, machinery, installations, equipment, fixtures, furniture, furnishings, tools, tooling, motor vehicles, computers, servers, printers, hardware, as well as all spare parts, components, supplies, materials and other tangible personal property (collectively, the "**Equipment**");

(vi) <u>Contracts</u>. All of Seller's rights and interests in the Contracts set forth on Schedule 2(a)(vi) (collectively, the "**Assigned Contracts**");

(vii) <u>Permits; Orders</u>.

(1) All Permits (and applications therefor) owned or held by Seller, or pursuant to which Seller has rights, or that otherwise relate to the Business or any of the other Acquired Assets (the "**Seller Permits**") and all of Seller's rights and interests therein, other than those Seller Permits that are prohibited by Law from being transferred by Seller;

(2) All of Seller's rights and interests in any Order pursuant to which Seller has any rights, or that otherwise relate to the Business or any of the other Acquired Assets (the "**Seller Orders**") that are prohibited by Law from being transferred by Seller;

(viii) <u>Books and Records</u>. All books, records, product descriptions and configurations, cost and pricing information, business plans, quality control records and manuals, bills of material and manufacturing documentation, including, without limitation,

4

blueprints, research and development files, personnel records of the Transferred Employees and all other records of Seller related to or used in the operation of the Business;

(ix) <u>Accounts Receivable</u>. Any and all trade accounts receivable, notes receivable and miscellaneous receivables of the Business (the "**Acquired Accounts Receivable**");

(x) <u>Cash</u>. All cash and cash equivalents of Seller;

(xi) <u>Other Assets</u>.

(1) All rights of Seller, if any, under any non-compete, nonsolicitation, nondisclosure or similar contract between Seller on the one hand, and other persons or entities (including former and present employees, contractors, customers and vendors), on the other hand;

(2) All potential and existing rights, claims, credits, causes of action or rights of set-off, if any, of Seller against any person or entity arising out of or related to the operation of Business, including unliquidated rights under manufacturers' and vendors, warranties, excluding, however, any of the foregoing to the extent that they relate to any Excluded Liabilities;

(3) All refunds, credits, allowances, rebates, incentives and other items owing by suppliers, vendors and others furnishing goods or providing services to Seller or with respect to the Business. except as set forth in this Agreement;

(4) All prepaid items or expenses, advances, credits, or deposits with or paid to third parties relating to the Business or any Acquired Assets except as set forth in this Agreement;

(5) all advertising or promotional materials of Sellers to the extent related to the other Acquired Assets;

(6) all goodwill and other intangible assets associated with the Business or the Acquired Assets;

(7) To the extent assignable, all benefits under the insurance policies issued to or for the benefit of Seller (the "**Seller Insurance Policies**"), including rights and proceeds thereunder arising from or relating to the Acquired Assets prior to the Closing Date; and

(8) all other assets of Seller reasonably required to enable Buyer to continue to operate the Business substantially as conducted by Seller or otherwise in any way used or useful in the Business.

(b) <u>Excluded Assets.</u> Notwithstanding anything to the contrary contained in Section 2(a) or any other provision of this Agreement, the Acquired Assets shall not include the following properties and assets of Seller (collectively, the "**Excluded Assets**"):

5

   (i) corporate minute books and stock transfer records;

   (ii) any avoidance actions of Seller under the Bankruptcy Code or applicable state law, including but not limited to preferences and fraudulent conveyance actions;

   (iii) any claims, or causes of action arising under or in connection with Chapter 5 of the Bankruptcy Code, including but not limited to preferences, fraudulent conveyances, and recovery of improper post petition transfers

   (iv) any refunds to which the Seller is entitled from any credit card processing companies;

  (c) <u>Excluded Liabilities</u>.  Notwithstanding anything to the contrary in this Agreement, Buyer shall not in any way assume or be obligated or be responsible (or be deemed to have become so) to pay, perform, satisfy or otherwise discharge any Liabilities of Seller whatsoever, including, without limitation, tax liabilities relating to the Acquired Assets or the Business for periods prior to the Closing Date (collectively, the "**Excluded Liabilities**").

 SECTION 3. <u>PURCHASE PRICE.</u>

 The aggregate purchase price (the "**Purchase Price**") payable for the Acquired Assets shall equal the amount of the outstanding indebtedness owed by Seller to CIT, approximately in the amount $5,000,000.

 SECTION 4. <u>CLOSING.</u>

 (a) <u>Closing</u>.  The closing of the transactions contemplated by this Agreement (the "**Closing**") will take place at the offices of Shulman, Rogers, Gandal, Pordy & Ecker, P.A., 12505 Park Potomac Avenue, Sixth Floor, Potomac, Maryland 20854, or at such other place, or pursuant to such other means, as may be mutually agreed upon by the Parties.  The Closing shall take place on a date (the "**Closing Date**") which is within one (1) business day after all of the conditions set forth in Sections 9 and 10 have been satisfied or waived, or at such other date and time as may be fixed by agreement between the Parties.

 (b) <u>Seller's Deliveries</u>.  At the Closing, Seller shall deliver to Buyer (i) possession of all tangible assets comprising the Acquired Assets, (ii) a Bill of Sale substantially in the form attached hereto as <u>Exhibit A</u> (the "**Bill of Sale**"), duly executed by Seller, (iii) any Assignment and Assumption Agreement(s) with respect to any Acquired Assets, and (iv) such other instruments of transfer that Buyer may reasonably deem to be necessary to transfer ownership of any of the Acquired Assets to Buyer (including assignments in respect of the Marks and the other Intellectual Property).

 (c) <u>Buyer's Deliveries</u>.  At the Closing, Buyer shall deliver the Purchase Price in a form satisfactory to CIT.