(b)     Buyer's representations and warranties contained in this Agreement shall be true and correct in all material respects as of the Closing Date as though such representations and warranties were made at such time;

(c)     Buyer shall have paid all cure amounts required to be paid under Section 365(b) of the Bankruptcy Code in order for Seller to assume and assign to Buyer all Assumed Agreements;

(d)     Buyer shall have performed or complied with, in all material respects, all obligations and covenants required by this Agreement to have been performed or complied with by it on or before the Closing Date;

(e)     There shall be no injunction or order of any court or government authority of competent jurisdiction prohibiting the transactions contemplated by this Agreement;

SECTION 11. <u>SURVIVAL OF REPRESENTATIONS AND WARRANTIES.</u>

The representations and warranties of the Parties hereto included or provided for herein, shall not survive the Closing and, after the completion of the Closing, there shall be no liability in respect thereof, whether such liability has accrued prior to the Closing or after the Closing, on the part of either of the Parties.

SECTION 12. <u>TERMINATION.</u>

12.1    <u>Termination Generally</u>.  At any time prior to the closing, this Agreement may be terminated as follows:

(a)     by mutual written consent of Buyer and Seller;

(b)     by Buyer if, as of such date of termination, the conditions specified in Section 9 hereto is not satisfied and any such breach shall have remained uncured for a period of ten (10) Business Days after Buyer shall have given written notice of such breach to Seller;

(c)     by Buyer or Seller in the event Seller selects a bid made by a Person other than Buyer as the "highest and best offer" in accordance with the Sale Procedures Order and the Bankruptcy Court enters an order approving the sale to such Person or in the event the Bankruptcy Court enters an order approving the sale to any other Person (such event referred to herein as a "**Third Party Sale**").

12.2    <u>Effect of Termination</u>.

(a)     If this Agreement is terminated as permitted by <u>Section 12.1</u> hereto, this Agreement shall become null and void and of no further force and effect, except for this Section 12.2 and Section 13 hereof, which shall remain in full force and effect. Nothing in this <u>Section 12.2</u> shall be deemed to release any party from any liability for any intentional breach by such party of the terms and provisions of this Agreement or impair the right of any party to

compel specific performance by any other party of its obligations under this Agreement prior to such termination.

(b) Notwithstanding anything herein to the contrary, if this Agreement is terminated by Buyer or Seller pursuant to Section 12.1(c), then the Expense Reimbursement (as defined below) shall be immediately due to Buyer. The Expense Reimbursement shall be paid to Buyer on Seller's behalf by any third party purchaser in a Third Party Sale by wire transfer of immediately available funds promptly upon closing The obligation to pay the expense reimbursement shall be a condition to any Third Party Sale and shall constitute an administrative expense of Seller under Section 364(c)(1) of the Bankruptcy Code with priority over any and all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code junior only to CIT's liens.

(c) For the purposes of this Agreement, "**Expense Reimbursement**" shall mean $150,000, which amount is intended to reimburse Buyer for fees and expenses of counsel, financial advisors and other professionals and consultants) incurred by Buyer in connection with this Agreement and the transactions contemplated hereby.

SECTION 13. <u>MISCELLANEOUS PROVISIONS.</u>

(a) <u>Press Releases and Public Announcements</u>. No Party shall issue any press release or make any public announcement relating to the subject matter of this Agreement without the prior written approval of the other Party; <u>provided, however,</u> that any Party may make any public disclosure it believes in good faith and on the advice of counsel is required by applicable law.

(b) <u>No Third-Party Beneficiaries</u>. This Agreement shall not confer any rights or remedies upon any person other than the Parties and their respective successors and permitted assigns.

(c) <u>Entire Agreement</u>. This Agreement (together with any schedules) and all other documents referred to herein constitute the entire agreement between the Parties and any prior understandings, agreements, or representations by or between the Parties, written or oral, to the extent they have related in any way to the subject matter hereof.

(d) <u>Succession and Assignment</u>. This Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors and permitted assigns, including, in the case of Seller, a Chapter 11 trustee in the event such a trustee is appointed, or a Chapter 7 trustee in the event the Chapter 11 Case is converted. No Party may assign either this Agreement or any of its rights, interests or obligations hereunder without the prior written approval of the other Party.

(e) <u>Counterparts; Facsimile Signatures</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument. Any signature page delivered by facsimile or as an attachment to an electronic mail message in ".pdf" or similar format shall be binding to the same extent as an original signature page with regard to any agreement subject to the terms hereof or any amendment thereto.

(f) <u>Headings</u>. The section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

(g) <u>Notices</u>. Any notice, statement, or other report required or permitted by this Agreement must be (i) in writing and is deemed given when (a) delivered personally to the recipient, (b) sent by facsimile before 5:00 p.m. Washington, DC time on a Business Day with a copy of such facsimile sent to the recipient by reputable overnight courier service (charges prepaid) on the same day, (c) five (5) days after deposit in the U.S. mail, mailed by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid); and (ii) addressed to the other Parties at the address set forth below, or at such other address as any Party may designate from time to time in writing in accordance with this Section 13(g).

If to Buyer:

    Classic Brands LLC
    8214 Wellmoor Court
    Jessup, Maryland 20794
    Attn: Michael Zippelli
    Fax No.: (443) 638-0072

With a copy to (which copy shall not constitute notice):

    Herman Law LLC
    1050 Winter Street, Suite 1000
    Waltham, MA 02451
    Attn: Dimitry S. Herman, Esquire
    Fax No.: (610) 646-9675

If to Seller:

    Classic Sleep Products, Inc.
    8214 Wellmoor Court
    Jessup, Maryland 20794
    Attn: Michael Zippelli
    Fax No.: (443) 638-0072

With a copy to (which copy shall not constitute notice):

    Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
    12505 Park Potomac Avenue, Sixth Floor
    Potomac, Maryland 20854
    Attn: Michael J. Lichtenstein, Esquire
    Fax No.: (301) 230-2891

(h) <u>Governing Law; Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with Federal Bankruptcy law, to the extent applicable, and where state law is implicated, the domestic laws of the State of Maryland, without giving effect to any choice or conflict of law provision or rule (whether of the State of Maryland or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Maryland. The Bankruptcy Court will have jurisdiction over any and all disputes between or among the Parties, whether in law or equity, arising out of or relating to this Agreement or any agreement contemplated hereby; <u>provided</u>, that to the extent that the Bankruptcy Court is not permitted under applicable law to exercise jurisdiction with respect to the matter in question, then the federal and state courts sitting in the State of Maryland in which venue is properly laid shall have such jurisdiction, and each Party submits thereto and waives the objections described above with respect thereto.

(i) <u>Amendments and Waivers</u>. No amendment of any term or provision of this Agreement shall be valid unless the same shall be in writing and signed by Buyer and Seller. Any term or provision of this Agreement may be waived, or the time for its performance may be extended, by the Party or Parties entitled to the benefit thereof. No waiver by any Party of any default, misrepresentation, or breach of warranty or covenant hereunder, whether intentional or not, shall be deemed to extend to any prior or subsequent default, misrepresentation, or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent such occurrence.

(j) <u>Severability</u>. Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

(k) <u>Expenses</u>. Except with respect to payment of the Expense Reimbursement pursuant to Section 12.2 hereof, each of Buyer and Seller will bear its own costs and expenses (including legal fees and expenses) incurred in connection with the Agreement and the transactions contemplated hereby.

(l) <u>Construction</u>. The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement. Any reference to any federal, state, local or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise. The word "including" shall mean including without limitation. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine, and the neuter.

(m) <u>Incorporation of Exhibits and Schedules</u>. The exhibits and schedules identified in this Agreement are incorporated herein by reference and made a part hereof.

      (n)    <u>Appointment of Trustee, Agent, or Plan Administrator</u>.  If a trustee, agent, or plan administrator is appointed in the Chapter 11 Case or any Chapter 7 case to which the Chapter 11 Case might be converted, such person shall have all the rights of Seller.

**[SIGNATURE PAGE FOLLOWS]**

16

**IN WITNESS WHEREOF**, the undersigned have executed this Asset Purchase Agreement as of the date first above written.

**SELLER:**

CLASSIC SLEEP PRODUCTS, INC.

By: _____
Name:
Title:

**BUYER:**

CLASSIC BRANDS, LLC

By: _____
Name: Michael Zippelli
Title: CEO

g:\75\clients\classic sleep products\agreements\asset purchase agmt.doc

17