**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CLASSIC SLEEP PRODUCTS, INC.** | ) | **Case No.  10-10077** |
| | ) | **Chapter 11** |
| Debtor | ) | |

**EMERGENCY MOTION FOR THE ENTRY OF INTERIM AND FINAL
ORDERS PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE
(A) AUTHORIZING THE DEBTOR TO OBTAIN DEBTOR-IN-POSSESSION
FINANCING (B) GRANTING SECURITY INTERESTS AND SUPER PRIORITY
CLAIMS AND MODIFYING THE AUTOMATIC STAY, (C) APPROVING
AGREEMENTS RELATING TO THE FOREGOING, (D) AUTHORIZING THE
DEBTOR TO USE CASH COLLATERAL, (E) GRANTING RELATED RELIEF, AND
(F) SCHEDULING A FINAL HEARING ON THE MOTION PURSUANT TO
<u>BANKRUPTCY RULE 4001(C)</u>**

Classic Sleep Products, Inc. (the "Debtor"), debtor and debtor-in-possession in the above-styled chapter 11 case, files this emergency motion (the "Motion") for the entry of an order pursuant to Sections 105, 363 and Section 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, <u>et</u> <u>seq</u>. (as amended, the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (a) authorizing the Debtor to obtain debtor-in-possession financing, (b) granting security interests and superpriority claims, (c) approving the agreements related to the foregoing, (d) authorizing the Debtor to use cash collateral; and (e) granting related relief.  In support of this Motion, the Debtor respectfully states as follows:

**<u>PRELIMINARY STATEMENT</u>**

1.      In order to provide the Debtor with the necessary funding to prevent the Debtor from having a cash shortfall, The CIT Group/Commercial Services, Inc. (the "Bank" or "DIP Lender") and JMX Capital Partners, LLC (the "Secondary DIP Lender") have agreed to provide

the Debtor with debtor-in-possession financing pursuant to that certain DIP Agreement with the DIP Lender (the "DIP Credit Agreement," a copy of which is attached hereto as <u>Exhibit A</u>) and that certain JMX DIP Credit Agreement with the Secondary DIP Lender (the "Secondary DIP Agreement"), a form of which is attached hereto as <u>Exhibit B</u>.  Therefore, the Debtor requests that the Court authorize it to execute the agreements to obtain post-petition financing from the DIP Lender and the Secondary DIP Lender.

<b><u>JURISDICTION AND VENUE</u></b>

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

<b><u>BACKGROUND</u></b>

3.      On January 4, 2010, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Debtor operates a mattress manufacturing facility and designs, manufactures, markets and sells high end mattresses and other bedding products.

5.      As of the Debtor's last payroll, the Debtor employed approximately 71 employees.

<b><u>RELIEF REQUESTED</u></b>

6.      Currently, the Debtor has insufficient funds to continue operating its business and to purchase new inventory.   Additionally, the Debtor seeks authority to borrow money from CIT to repay the CIT pre-petition indebtedness which will facilitate administratively CIT's continued funding to the Debtor.

2

7.      By this Motion, the Debtor respectfully requests the entry of interim and final orders pursuant to Sections 105, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014 (a) granting authority for the Debtor to obtain secured debtor-in-possession financing, (b) granting security interests and superpriority claims, (c) approving the DIP Credit Agreement and all other documents related thereto and the Secondary DIP Agreement and all other documents related thereto, (d) authorizing the use of cash collateral, and (e) granting related relief.

## THE NEED FOR FINANCING

8.      Prior to filing the Chapter 11 petition, the Debtor negotiated and entered into an Asset Purchase Agreement (the "APA") with Classic Brands, LLC.

9.      At this point, the Debtor has insufficient funds to continue to operate until approval of and closing on the sale of assets.

10.     The Debtor believes that selling the assets pursuant the APA will provide the greatest return to creditors.

11.     Accordingly, the Debtor seeks authority to enter into the DIP Credit Agreement with the DIP Lender and the Secondary DIP Agreement with the Secondary DIP Lender which is necessary to supplement the amounts the DIP Lender is willing to advance to ensure that sufficient financing will be available to fund operations and to pay such other business expenses necessary to preserve the Debtor's business[1]. For administrative ease of avoiding characterization of collection as either pre-petition or post-petition, the DIP funds will be used to repay the pre-petition debt owed to CIT and additional advances will be available to fund the purchase of inventory and ordinary course working capital expenses and ongoing administrative

---

[1] The DIP Loan contemplates repaying the pre-petition indebtedness owed to the DIP Lender for administrative ease, in addition to advancing additional funds to be used in the Chapter 11 proceeding.

expenses.  The need for these funds is especially great because of the increased business and

inventory purchases anticipated during the Chinese New Year.


## SUMMARY OF THE DIP FACILITY

12.     As set forth in more detail in the DIP Credit Agreement, the loan from the DIP

Lender (the "DIP Credit Facility") contains the following pertinent terms.[2]

| | |
|---|---|
| BORROWER: | The Debtor |
| REVOLVING LOAN COMMITMENT: | $5,500,000.00 in the aggregate (this includes $4,506,856 on an interim basis to repay the existing pre-petition indebtedness and fund additional working capital).  Amounts borrowed and repaid may be reborrowed on any Business Day, but excluding the Maturity Date. |
| USE OF PROCEEDS: | The proceeds of the Loan shall be used solely in accordance with the Budget attached to the DIP credit agreement to finance ordinary course working capital expenses and ongoing administrative expenses of Borrower during the Chapter 11 Case. |
| INTEREST AND FEES: | Prime plus 1.5% per annum.  Interest shall accrue and be due and payable in full on the Maturity Date; $25,000 loan facility fee. |
| OPTIONAL PREPAYMENT OF LOANS: | Optional prepayment, without penalty or premium. |
| LIENS AND SUPERPRIORITY CLAIMS: | Super-priority liens, except as set forth in the Post-Petition Credit Agreement, replacements liens on the Collateral. |
| COLLATERAL: | All assets of Borrower which shall, in all events, include all Receivables generated by the business of Borrower. |

---

[2] This Motion contains only a summary of the terms of the DIP Credit Agreement.  Parties in interest are encouraged to review the DIP Credit Agreement and the Secondary DIP Credit Agreement in detail.  To the extent of any differences between this summary and the DIP agreements, the DIP agreements control.  The Secondary DIP loan contains similar terms; however, the Secondary DIP Loan will be subordinate to the DIP Loan in all respects.  The Debtor seeks to borrow $750,000.00 from the Secondary DIP Lender on an interim basis and an additional $250,000.00 on a final basis.

| REPRESENTATIONS AND WARRANTIES: | Customary representations and warranties for a transaction of this nature, including, without limitation, the representations and warranties of Borrower. |
|---|---|
| COVENANTS: | Customary covenants, including, without limitation, compliance with the covenants the Borrower made. |
| EVENTS OF DEFAULT: | Customary events of default for a transaction of this nature. |

**BASIS FOR RELIEF**

13.     Section 364 of the Bankruptcy Code provides, in pertinent part, as follows:

(a) unless the court orders otherwise, the trustee[3] may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

(b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –

(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

(d) (1)  The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –

(A)     the trustee is unable to obtain such credit otherwise; and

---

[3] Under section 1107(a) of the Bankruptcy Code, a debtor-in-possession has substantially all the rights and powers of a trustee in a chapter 11 case.

5

(B)    there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

<u>See</u> 11 U.S.C. § 364(a) through (d)(1).

14.    Section 364 of the Bankruptcy Code provides bankruptcy courts with the power to authorize post-petition financing for a Chapter 11 debtor-in-possession.  <u>See</u> <u>In the Matter of Vineyard Bay Develop. Co., Inc.</u>, 132 F.3d 269, 272 (5th Cir. 1998); <u>see</u> <u>also</u> <u>In re Pro Set, Inc.</u>, 193 B.R. 812, 814 (Bankr. N.D. Tex. 1996) (court's prior order authorized debtor to incur post-petition indebtedness under section 364); <u>see also</u> <u>In re Defender Drug Stores, Inc.</u>, 126 B.R. 76, 81 (Bankr. D. Ariz. 1991).  "Having recognized the natural reluctance of lenders to extend credit to a company in bankruptcy, Congress designed [section] 364 to provide 'incentives to the creditor to extend post-petition credit.'"  <u>See</u> <u>Defender Drug Store</u>, 126 B.R. at 81.  The incentives enumerated in section 364 are not intended to be an exhaustive list of the inducements that a court may grant.  <u>Id.</u>  In fact, it is not uncommon for a court to approve a lending arrangement containing terms that far exceed those authorized by section 364.  <u>Id.</u>

15.    Generally, courts apply a three-part test to determine whether credit obtained may be granted under section 364(c).  The three-part test includes demonstrating that (i) the debtor cannot obtain credit unencumbered or without superpriority status, (ii) the credit transaction is necessary to preserve the assets of the estates, and (iii) the terms of the credit agreement are fair, reasonable and adequate given the circumstances of the debtor-borrower and the proposed lender.  <u>See</u> <u>In re Crouse Group, Inc.</u>, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987), aff'd, 75 B.R. 553 (E.D. Pa. 1987).

16.    Against this statutory backdrop, courts will evaluate the facts and circumstances of a debtor's case and accord significant weight to the necessity for obtaining the financing.  <u>See</u> <u>In re Ames Dep't Stores, Inc.</u>, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).  Debtors-in-possession

are generally permitted to exercise their basic business judgment consistent with their fiduciary duties when evaluating the necessity of proposed protections for a party extending credit under section 364 of the Bankruptcy Code. Id. at 38. Further, in satisfying the standards of section 364 of the Bankruptcy Code, a debtor does not need to seek credit from every possible source. Rather, it should make a reasonable effort to seek other sources of credit of the type set forth in sections 364(a) and (b). See In re Snowshoe Co., 789 F. 2d 1085, 1088 (4th Cir. 1986) (finding that trustee had demonstrated good faith effort that credit was not available without granting of senior liens: "the statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable").

17.    In light of the circumstances in which the Debtor needs funding, including the limited amount of time within which such funding is needed, it was not possible for the Debtor to obtain its post-petition working capital financing on an unsecured basis pursuant to section 364(a) or 364(b) of the Bankruptcy Code. The Debtor determined that it would not be able to obtain financing other than by offering the relevant debtor-in-possession lender liens over the Debtor's property. The circumstances of this case dictate that the Debtor obtains its financing under section 364(c) and (d) of the Bankruptcy Code. Authorizing the Debtor to enter into the DIP loans is necessary and appropriate to preserve the value of the Debtor's estates for all parties-in-interest.

18.    Finally, the Debtor believes that the terms and conditions of the DIP Agreements and are fair and reasonable and are necessary to support the Debtor's ongoing operations. The Debtor believes that the proposed DIP Agreements are the only financing available under the circumstances and well within the exercise of sound business judgment. Based on the foregoing, the Debtor requests that the Court authorize it to enter into the DIP Credit Agreement and related

documents and obtain financing from the DIP lender pursuant to the terms contained therein and to enter into the Secondary DIP Agreement and related documents.

**Interim Approval of the DIP Financing Should Be Granted**

19.     Bankruptcy Rule 4001(c) provides that a final hearing on a motion to obtain post-petition credit pursuant to section 364 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion.  See Fed. R. Bankr. P. 4001(c)(2). Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.  Id.

20.     Pursuant to Bankruptcy Rule 4001(c), the Debtor requests that the Court conduct a preliminary expedited hearing (the "Interim Hearing") for the entry of an interim order (the "Interim Order") authorizing the Debtor to obtain working capital advances under the DIP Agreements pending a final hearing on the Motion (the "Final Hearing").

21.     The Debtor has an urgent and immediate need for cash to continue to operate its business.  Without sufficient cash to operate and pay expenses, the Debtor will not be able to continue operations and sell its assets as a going concern.

22.     The Debtor does not have sufficient time to attempt to obtain unsecured credit or debt allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code in an aggregate amount sufficient and readily available to pay the expense described above. Moreover, under the present circumstances and posture of this proceeding, the Debtor does not believe it would be able to obtain unsecured credit to fund its operations.  Therefore, absent interim approval of the DIP Agreements at this critical juncture, the preservation of the value of the Debtor's business and assets for the benefit of all parties will be jeopardized.  In the

circumstances of this Chapter 11 Case, granting the relief requested in this Motion is in the best interests of the Debtor, its estate and creditors.

23.     No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests the entry of interim and final orders pursuant to sections 105, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014 (a) granting authority for the Debtor to obtain secured debtor-in-possession financing, (b) granting security interest and superpriority claims, (c) approving the DIP Credit Agreement and all other documents related thereto, (d) approving the Secondary DIP Agreement and all other documents related thereto, (e) authorizing the use of cash collateral, and (f) granting related relief.

Respectfully submitted,

**SHULMAN, ROGERS, GANDAL,
PORDY & ECKER, P.A.**

By:     /s/  Michael J. Lichtenstein
Michael J. Lichtenstein (Bar No. 05604)
John D. Sadler (Bar No. 16421)
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland 20854
TEL:   (301) 230-5231
          (301) 230-5259
FAX:  (301) 230-2891
Attorneys for Debtor

Dated:   January 4, 2010

g:\75\clients\classic sleep products-117139.02\pleadings\motion re dip financing.doc