

NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### Baltimore Division

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| CLASSIC SLEEP PRODUCTS, INC. | ) | Case No. 10 - 10077 NVA |
| | ) | |
| Debtor | ) | Chapter 11 |
| | ) | |
| | ) | |

**FINAL ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR
ORDER PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE (A)
AUTHORIZING THE DEBTOR TO OBTAIN DEBTOR-IN-POSSESSION
FINANCING, (B) GRANTING SECURITY INTERESTS AND SUPER
PRIORITY CLAIMS AND MODIFYING THE AUTOMATIC STAY, (C)
APPROVING AGREEMENTS RELATING TO THE FOREGOING, (D)
AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL, (E)
GRANTING RELATED RELIEF, AND (F) SCHEDULING A FINAL
HEARING ON THE MOTION PURSUANT
TO BANKRUPTCY RULE 4001(C)**

Classic Sleep Products, Inc., debtor and debtor-in-possession in the above-styled chapter

11 case ("*Debtor*"), having moved on January 4, 2010 (the "*Motion*"), for an order authorizing

the Debtor to incur post-petition secured indebtedness and to grant a security interest and

superpriority claim pursuant to Sections 364(c) and (d) of the United States Bankruptcy Code

("*Bankruptcy Code*") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure ("*Bankruptcy Rules*"); and the Motion having sought the following relief:

(i)    the Court's authorization, pursuant to Sections 364(c) and (d) of the Code and Bankruptcy Rules 4001 and 9014 for the Debtor to obtain from The CIT Group / Commercial Services, Inc. (the "*DIP Lender*"), revolving credit loans in an aggregate principal amount not to exceed $5,500,000 (the "*DIP Loans*"), on the terms and subject to the conditions set forth in that certain DIP Agreement attached hereto as Exhibit A (together with all schedules, exhibits and annexes thereto and including all "Factoring Agreements" as defined in Exhibit A, as the same are at any time amended or restated, the *"DIP Agreement")*,[1] to finance ordinary course working capital expenses and ongoing administrative expenses of the Debtor's Chapter 11 Case in accordance with a budget satisfactory to the DIP Lender and on the terms and subject to the conditions of the DIP Agreement and the Court's authorization for the Debtor to obtain additional debtor-in-possession financing in an amount not to exceed $1 million (the "*Secondary DIP Loan*") from JMX Capital Partners, LLC (the "*Secondary DIP Lender*") on the same terms and conditions but subordinate in terms of lien priority and repayment to the DIP Loans;

(ii)   the Court's Order, pursuant to Sections 364(b), (c)(1), (c)(2), (c)(3) and (d)(1) of the Bankruptcy Code, that all Obligations of the Debtor under the DIP Agreement and the other Loan Documents shall constitute allowed superpriority administrative expense claims in these Chapter 11 Cases pursuant to Section 364(c)(1) of the Bankruptcy Code. Subject only to the Carve-Out, such superpriority administrative claims shall have priority at all times over all other claims, costs, and expenses of the kinds specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1114, or any other provision of the Bankruptcy Code,

---

[1]        Capitalized terms used but not defined in this Interim Order shall have the meanings ascribed to such terms in the DIP Agreement.

and shall at all times be senior to the rights of the Debtor, the Debtor's estate, and any successor trustee or estate representative in this Chapter 11 Case or any subsequent proceedings or cases under the Code.  All Obligations of the Debtor under the DIP Agreement and the other Loan Documents shall, pursuant to Section 364(c)(2) of the Bankruptcy Code, at all times be secured by perfected first priority Liens on all Collateral that is not otherwise subject to any other valid, perfected and non-avoidable liens.  All Obligations of the Debtor under the DIP Agreement and the other Loan Documents shall, pursuant to Section 364(c)(3) of the Bankruptcy Code, at all times be secured by perfected junior liens on all property of the Debtor (other than avoidance actions) that is subject to valid, perfected and non-avoidable Permitted Encumbrances or warehouseman's liens.  All Obligations of the Debtor under the DIP Agreement and the other Loan Documents shall, pursuant to Section 364(d)(1) of the Bankruptcy Code, at all times be secured by perfected first priority senior priming Liens on all of the Collateral that is subject to valid, perfected, and non-avoidable Liens in existence as of the date hereof other than: (1) Permitted Encumbrances currently existing and those arising after the date hereof as provided in Section 3(c) of this Order; (2) the Carve-Out; and (3) valid, duly perfected and non-avoidable warehouseman's liens as provided in Section 3(c).  All Obligations of the Debtor under the DIP Agreement and the other Loan Documents shall be secured by perfected Liens on all of the Collateral under Sections 364(c)(2), (c)(3), and (d)(1) of the Code, senior to all other Liens (other than Permitted Encumbrances), regardless of when the Liens were obtained and regardless of their previous priority. The Liens to be granted under Section 364(d)(1) shall be priming, first priority (other than Permitted Encumbrances), perfected Liens on all of the Collateral;[2]

---

[2]        The Secondary DIP Loan shall be afforded the same protections but shall be fully subordinate in terms of lien priority, repayment and other rights and remedies granted to the DIP Lender.

(iii)  the Court's order, pursuant to Bankruptcy Rule 4001, that an interim hearing (the "*Interim Hearing*") be held before this Court to consider entry of an interim order (this "*Interim Order*") approving the post-petition financing facility on an interim basis and authorizing the Debtor to obtain, on an interim basis, the DIP Loans pursuant to the terms and conditions of an interim order and the DIP Agreement, and further requesting that a final hearing (the "*Final Hearing*") thereafter be held before this Court to consider entry of a final order (the "*Final Order*") authorizing, on a final basis, the financing contemplated by the DIP Agreement, as set forth in the Motion; and

(iv)  the Court's authorization for the Debtor to use "*Cash Collateral*" (as defined in 11 U.S.C. § 363(a)) pursuant to Section 363(c) of the Bankruptcy Code in accordance with the terms upon which the entities with an interest in such cash collateral consent; and

Based upon this Court's review of the Motion and all matters brought to the Court's attention at interim hearings on January 8 and 13, 2010 (collectively, the "*Interim Hearing*") and a final hearing on January 29, 2010, notice of which was provided to, among others, (1) the United States Trustee (the "*U.S. Trustee*") and (2) counsel for DIP Lender and the Secondary DIP Lender (defined below), (3) counsel for the Debtor, (4) the twenty largest unsecured creditors, (5) the members of any creditors' committee formed and (6) any creditors or other parties that have filed requests for notice (collectively, the "*Notice Parties*"), all of which Notice Parties had the opportunity to participate in the Final Hearing; and the agreement of the parties, and after due deliberation and consideration of the objections initially filed by the U.S. Trustee and subsequently withdrawn by agreement, including consideration of the terms of this Final Order, the Court makes the following findings of fact and conclusions of law applicable to the financing sought by Debtor from DIP Lender and Secondary DIP Lender, and Debtor's request to use Cash

4

Collateral (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa):*

THE COURT HEREBY FINDS AND DETERMINES:

A.      On January 4, 2010 (the *"Petition Date"),* Debtor filed with this Court its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code and is continuing to manage its assets and to operate its businesses as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed herein.

B.      Debtor is engaged in the business of manufacturing, importing and selling mattresses and related goods.

C.      Debtor (and not any subsequent trustee or committee) acknowledges that, as of the Petition Date, Debtor was indebted to The CIT Group / Commercial Services, Inc. (in such capacity, the *"Pre-Petition Lender")* in the aggregate principal amount of $4,057,719.00 (such principal amount, together with all interest, fees, attorneys' fees, expenses and other amounts heretofore or hereafter accruing thereon or at any time chargeable to Debtor in connection therewith, is referred to as the *"Pre-Petition Debt")* the Pre-Petition Debt arose from revolving loans (the *"Pre-Petition Revolving Loans"*) and a term loan (the *"Pre-Petition Term Loan"*) extended by Pre-Petition Lender to Debtor and affiliates (collectively, the *"Pre-Petition Loans").* The Pre-Petition Loans were made pursuant to a certain Financing Agreement, dated as of August 30, 2007, by and between Pre-Petition Lender, Debtor and certain of Debtor's affiliates, a copy of which may be reviewed at the offices of Debtor's counsel (hereinafter, together with all amendments thereto and modifications thereof, the *"Pre-Petition Loan Agreement").* Debtor (but not any subsequent trustee) further stipulates in the Motion and at the Interim Hearing that the Pre-Petition Debt is due and owing to Pre-Petition Lender without any defense, offset, recoupment or counterclaim.

D.    Debtor (but not any subsequent trustee or committee) acknowledges that as security for the payment of all Pre-Petition Debt, Debtor and its affiliates granted to Pre-Petition Lender, pursuant to the Pre-Petition Loan Agreement and related documents (collectively, the *"Pre-Petition Loan Documents")* security interests in and liens upon all of Debtor's personal property, including, without limitation, all of Debtor's accounts, inventory, equipment, goods, general intangibles, chattel paper, documents of title, instruments, investment property, deposit accounts, and books and records (all such personal property, as the same existed on or at any time prior to the Petition Date, together with all cash and non-cash proceeds thereof, being hereinafter referred to as the *"Pre-Petition Collateral").*

E.    As set forth in the Motion, an immediate and ongoing need exists for Debtor to obtain financing and use the Cash Collateral generated from the Pre-Petition Collateral and the DIP Collateral (as defined below) to continue the operation of its business as debtor-in-possession under Chapter 11 of the Bankruptcy Code, to minimize the disruption of Debtor's business and to allow the Debtor to facilitate an orderly sale of its business. Despite diligent efforts, Debtor has been unable to obtain financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code; and other than the financing from DIP Lender pursuant to the DIP Agreement (as hereinafter defined) and the financing offered by Secondary DIP Lender, Debtor is unable to obtain financing in the form of credit secured by liens that are junior to existing liens on property of the estates pursuant to Sections 364(c)(2) and (c)(3) of the Bankruptcy Code.

F.    Debtor has requested DIP Lender to establish a secured, revolving lending facility in favor of Debtor pursuant to which Debtor may obtain and repay the DIP Loans from time to

time and that the Secondary DIP Lender provide a DIP loan subordinate in lien priority and repayment to the DIP Lender's DIP Loan.

G.    As evidenced by its joinder to this Final Order, DIP Lender is willing to provide the DIP Loans, upon the terms and conditions set forth herein and in that certain DIP Agreement to be entered into by Debtor and DIP Lender, a copy of which is attached to this Final Order as **Exhibit A**. DIP Lender's willingness to make DIP Loans is conditioned upon, among other things, Debtor's obtaining Court authority to provide adequate protection to DIP Lender's Collateral pursuant to Sections 361 and 363 of the Bankruptcy Code and authority to satisfy in full the Pre-Petition Loans.

H.    A condition to the willingness of DIP Lender to make the DIP Loans is that, as security for the prompt payment of all DIP Loans, all interest, fees, expenses and the charges at any time payable by Debtor under the DIP Agreement, DIP Lender receive a security interest in and lien upon all of Debtor's pre-petition and post-petition assets (real and personal), including, without limitation, all of Debtor's cash, accounts, inventory, equipment, goods, fixtures, general intangibles, documents of title, instruments, chattel paper, deposit accounts, letter-of-credit rights, commercial tort claims, investment property, proceeds of any sale or assignment or other disposition of leasehold interests (but such lien shall not extend to the lease itself), and books and records relating to any assets of Debtor and all proceeds (including insurance proceeds) of the foregoing, whether now in existence or hereafter created, acquired or arising and wherever located (all such real and personal property, and the proceeds thereof, being collectively hereinafter referred to as the *"Collateral"),* and that such liens have the priority hereinafter set forth; provided, however, that the Collateral shall not include any *"Avoidance Claims"* (defined below).

I.      Debtor has represented and warranted that there are no security interests in or liens upon any of the Collateral, other than "*Permitted Encumbrances*" (as defined in the DIP Agreement) and liens held by the Pre-Petition Lender.

J.      Pursuant to an Interim Order dated and entered January 13, 2010 (the "Interim Order"), the Court authorized the Debtor to (i) obtain, on an interim basis, DIP Loans for purposes specified in the Debtor's cash flow forecast annexed to this Final Order as **Exhibit B** (the *"Budget");* and (ii) to use Cash Collateral as hereinafter set forth.

K.      Debtor has certified that a copy of the Motion (together with copies of the proposed DIP Agreement and Budget annexed thereto) and the Interim Order have been served upon the Notice Parties.

L.      Pursuant to the terms and conditions of the Interim Order and the DIP Agreement, DIP Lender has previously made available to the Debtor up to $500,000.00 of financing and Secondary DIP Lender has made $750,000.00 of financing available on an interim basis.

M.      Good cause has been shown for the entry of this Final Order and authorization for Debtor to obtain DIP Loans pursuant to the DIP Agreement and to use Cash Collateral as hereinafter provided.  Entry of this Final Order will minimize disruption of Debtor's business and operations, will preserve the assets of the Debtor's estate, will preserve jobs and is in the best interest of Debtor, its creditors and the estate.  The terms of the proposed DIP Loans and use of Cash Collateral appear fair and reasonable, reflect Debtor's exercise of business judgment and are supported by reasonably equivalent value and fair consideration.

N.      It appears that the DIP Agreement and this Final Order have been negotiated in good faith and at arm's length between Debtor, on the one hand, and Pre-Petition Lender, DIP Lender and Secondary DIP Lender (collectively, the *"Lenders"),* on the other. Therefore, all

interim and final DIP Loans to Debtor pursuant to the DIP Agreement shall be deemed to have been made in good faith within the meaning of Section 364(e) of the Bankruptcy Code.

O.      This Court has jurisdiction to enter this Final Order pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2).

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

1.      Grant of Motion; Authorization of Interim Financing. The Motion is hereby granted on a final basis, and Debtor is hereby authorized (i) to execute and deliver the DIP Agreement in substantially the form annexed to the Motion and all instruments, Factoring Agreements, security agreements, assignments, pledges, mortgages and other documents referred to therein or requested by DIP Lender to give effect to the terms thereof (the DIP Agreement and such other instruments, security agreements, assignments and other documents, as at any time amended, being collectively called the *"DIP Financing Documents");* (ii) to obtain DIP Loans in accordance with the DIP Agreement from time to time up to an aggregate principal amount outstanding at any time not to exceed $5,500,000 from CIT and $1,000,000.00 from Secondary DIP Lender which shall be or shall have been used for the Debtor's operating expenses in the ordinary course pursuant to the Budget, and to incur any and all liabilities and obligations thereunder and to pay when due all interest, fees, expenses and other obligations provided for under the DIP Financing Documents; (iii) to factor receivables to DIP Lender in accordance with the DIP Agreement; (iv) to satisfy all conditions precedent and perform all obligations hereunder and thereunder in accordance with the terms hereof and thereof; and (v) to satisfy the Pre-Petition Revolving Loans from the proceeds of the DIP Loans.  DIP Lender shall not have any obligation or responsibility to monitor Debtor's use of the DIP Loans or Cash Collateral and it may rely

9

upon Debtor's representations that the amount of DIP Loans requested at anytime, and the use thereof, are in accordance with the requirements of this Final Order and the DIP Agreement.

       2.    <u>Execution and Delivery of DIP Financing Documents</u>.  The DIP Financing Documents shall constitute valid and binding obligations of Debtor, enforceable against Debtor in accordance with their terms. In furtherance of the provisions of Section 1 of this Final Order, Debtor is authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of factoring agreements, security agreements, pledge agreements, mortgages, deeds of trust, deeds to secure debt, financing statements and intellectual property filings), and to pay all filing and recording fees, in each case as may be necessary or, in the opinion of DIP Lender, desirable to give effect to any of the terms and conditions of the DIP Financing Documents, to validate the perfection of the DIP Liens (as defined below) or as otherwise required or contemplated by the DIP Financing Documents.

       3.    <u>DIP Liens</u>. Subject to the provisions of Section 8(b) of this Order, all DIP Loans, together with all interest, fees and other charges including, without limitation, reasonable legal fees (all subject to Court approval), at any time or times payable by Debtor to DIP Lender in connection therewith or otherwise pursuant to the DIP Financing Documents (all such DIP Loans, interest fees and other charges, including any "Obligations" as such term is defined in the DIP Agreement, are collectively called the *"DIP Obligations")* shall be, and hereby are, secured by security interests and liens in favor of DIP Lender with respect to all of the Collateral, as follows:

       (a)    pursuant to Section 364(c)(2) of the Bankruptcy Code, perfected first priority senior security interests in and liens upon all Collateral that, as of the Petition Date, is not subject to other valid, perfected and non-avoidable liens or to valid and unavoidable liens in

existence on the Petition Date that are perfected thereafter (with a priority that relates back to a date prior to the Petition Date), as permitted by Section 546(b) of the Bankruptcy Code;

(b)       pursuant to Section 364(c)(3) of the Bankruptcy Code, perfected junior security interests in and liens upon all Collateral that is subject to valid, perfected and non-avoidable  (i) "*Permitted Encumbrances*" (as defined in the DIP Agreement) in existence on the Petition Date or to valid and unavoidable Permitted Encumbrances in existence on the Petition Date that are perfected thereafter (with a priority that relates back to a date prior to the Petition Date) as permitted by Section 546(b) of the Bankruptcy Code; and (ii) warehouseman's liens that existed on the Petition Date; and

(c)       pursuant to Section 364(d) of the Bankruptcy Code, perfected first priority security interests in and liens upon all Collateral, superior to all other creditors' liens other than: (i) the Permitted Encumbrances in existence on the Petition Date; and (ii) valid and unavoidable Permitted Encumbrances in existence on the Petition Date that are perfected thereafter (with a priority that relates back to a date prior to the Petition Date) as permitted by Section 546(b) of the Bankruptcy Code; and (iii) valid, duly perfected and unavoidable warehouseman's liens that existed on the Petition Date, but only to the extent of (and as limited by the value of any collateral securing) any such liens.

All of the security interests and liens referred to above and those granted and conveyed pursuant to the DIP Financing Documents are referred to in this Final Order as *"DIP Liens."* Notwithstanding the foregoing provisions of this Section 3 or anything to the contrary in the DIP Financing Documents, the DIP Liens shall not attach to any of the following property (unless any Debtor shall grant or consent to any lien or security interest therein in favor of any other party, in which event all such property shall be subject to the DIP Liens referred to in subparagraph (a) of this Section 3): (x) any claims pursuant to Sections 502(d), 544, 545, 547, 548, 549, 550, 551 or

553 of the Bankruptcy Code *("Avoidance Claims"),* or (y) any proceeds or property recovered in connection with the successful prosecution or settlement of Avoidance Claims *("Avoidance Proceeds").*

        4.     <u>Superpriority Claim; Surcharge</u>.

        (a)     Subject to the provisions of Section 8(b) of this Order, all *"Interim DIP Use"* (as defined in Section 6 of this Final Order) shall have, without requiring the filing of a motion for allowance of an administrative expense, administrative priority in accordance with, and shall constitute an allowed superpriority administrative expense (the *"Superpriority Claim"*) pursuant to, Section 364(c)(1) of the Bankruptcy Code over all other administrative expenses in Debtor's case including, 503(a), 503(b) and 506(c) of the Bankruptcy Code. DIP Lender shall not seek to assert its Superpriority Claim under Section 364(c)(1) to any Avoidance Proceeds, but shall be entitled to assert a claim under Section 503(b) of the Bankruptcy Code ratably with other claimants holding claims entitled to priority under Section 503(b) of the Bankruptcy Code.

        (b)     Except for the Carve-Out (as defined below), no costs or administrative expenses that have been or may be incurred in this Chapter 11 case, in any proceedings related hereto or in any superseding Chapter 7 case and no priority claims are or will be prior to or on a parity with the Superpriority Claim of DIP Lender. In no event shall any costs or expenses of administration be imposed upon DIP Lender or any of the Collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of DIP Lender, and no such consent shall be implied from any action, inaction or acquiescence by DIP Lender.

        5.     <u>Repayment</u>. The DIP Obligations shall be due and payable, and shall be paid, as and when provided in the DIP Financing Documents and as provided herein, without offset or counterclaim. In no event shall Debtor be authorized to offset or recoup any amounts owed, or

alleged owed, by DIP Lender to Debtor or any of their subsidiaries or affiliates against any of the DIP Obligations unless and to the extent expressly otherwise agreed to in writing by DIP Lender.

6.    <u>Permitted Uses of Cash Collateral and DIP Loans</u>.  Debtor shall use Cash Collateral and DIP Loans only for the specific purposes and in the amounts set forth on the Budget prepared by the Debtor and attached hereto as Exhibit "B" (subject to a maximum weekly and cumulative variance, not to exceed 10%).  In addition to the foregoing and as adequate protection of Pre-Petition Lender's interest, Debtor shall make timely amortization payments to Pre-Petition Lender as required under the Pre-Petition Term Loan and shall satisfy such Pre-Petition Term Loan at closing on the sale, and DIP Lender is hereby authorized to make DIP Loans or use Cash Collateral to facilitate such amortization payments under the Pre-Petition Term Loan. All proceeds of the Collateral and all Cash Collateral whether constituting proceeds of Pre-Petition Collateral or DIP Collateral which are due to or received by or on behalf of the Debtor shall be remitted to the pre-petition lockbox account or other lockbox account approved in writing by DIP Lender, for application in accordance with the terms of this Final Order and the DIP Agreement. DIP Lender shall make advances under the DIP Agreement to Debtor under this Final Order, from the amounts collected in the lockbox account and based upon the availability calculations set forth under the DIP Agreement, up to the amount of the "*Advances from CIT*" reflected on the Budget for such week. Unless and until all of the Pre-Petition Loans and Post-Petition Obligations have been indefeasibly paid in full and the DIP Facility (and all commitments of the DIP Lender thereunder) has terminated, the Debtor shall not be authorized to use any Cash Collateral for any purpose except as otherwise authorized by Section 6 of this Final Order or the DIP Agreement or as otherwise authorized by Pre-Petition Lender, in writing in its sole and absolute discretion. Notwithstanding the foregoing, all Collateral (including Cash Collateral) shall be subject to the Carve-Out.

13

7.      <u>Adequate Protection of DIP Lender</u>. As adequate protection pursuant to Sections 361 and 363 of the Bankruptcy Code for the Debtor's use, consumption, sale, collection or other disposition of any of the Pre-Petition Collateral (including Cash Collateral):

(a)      DIP Lender is hereby granted a replacement lien in and to all of the Collateral as partial adequate protection to DIP Lender to the extent that the Debtor's use, consumption, sale, collection or other disposition of any Collateral results in any diminution in the value of DIP Lender's security interest in or lien upon such Collateral. Without limiting the generality of the preceding sentence, the foregoing replacement liens are granted as adequate protection in exchange for Debtor's rights to use funds in deposit accounts controlled by Pre-Petition Lender as of the Petition Date and deposit accounts controlled by DIP Lender for purposes and in the amounts specified in the Budget. The foregoing replacement liens in favor of DIP Lender shall be senior in priority to the liens granted to the Secondary DIP Lender in any of the Collateral.

(b)      Except as otherwise provided in this Section 7(b), all proceeds realized from any sale or other disposition of any Collateral shall be remitted directly to DIP Lender for application to the DIP Obligations, as set forth herein and re-loaned to the Debtor on the terms and conditions set forth in the DIP Financing Documents.  Amounts applied to the DIP Obligations may be applied in such order of application as DIP Lender may elect in its discretion, consistent with the provisions of Section 506(b) of the Bankruptcy Code.

(c)      Nothing herein shall be deemed to be a waiver by DIP Lender of its rights to request additional or further protection of its interests in any property of the Debtor, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner or the conversion or dismissal of this Chapter 11 case, or to request any other relief in these cases, nor shall anything herein or in any of the DIP Financing Documents constitute an admission by DIP

14

Lender of the quantity, quality or value of any Collateral securing the Pre-Petition Debt or Post-Petition Debt or constitute a finding of adequate protection with respect to the interests of DIP Lender in any Collateral. DIP Lender shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of Section 507(b) of the Bankruptcy Code in connection with any use, sale, or other disposition of any of the Collateral, to the extent that the protection afforded by this Final Order to Pre-Petition Lender or DIP Lender proves to be inadequate.

8.      Carve-Out.

(a)      As used herein, *"Professional Expenses"* shall mean, collectively, compensation and expense reimbursement of (i) professionals (including attorneys, accountants, appraisers, consultants and investment bankers) retained by Debtor (the *"Debtor Professionals"*), (ii) professionals (including attorneys, accountants, appraisers, consultants and investment bankers) retained by each statutory committee (each, a *"Committee"*) appointed in these Chapter 11 cases (the *"Committee Professionals";* the Debtor Professionals and the Committee Professionals being hereinafter referred to collectively as *"Professional Persons"),* and (iii) the reasonable out-of-pocket expenses (other than fees paid to legal counsel or other professionals) of members of each Committee (*"Committee Expenses"),* in each case only to the extent that such compensation and expense reimbursement is approved by the Court.

(b)      The DIP Liens and Superpriority Claim conferred upon DIP Lender, and all liens in favor of the Pre-Petition Lender, shall be subject and subordinate to the payment of up to a maximum of $120,000.00 ($90,000.00 of which shall be available for Debtor Professionals and the balance of which shall be available for Carve-Out uses other than Debtor Professionals) towards the following expenses, to the extent that there are not sufficient, unencumbered funds in Debtor's respective estates (and, in the case of Debtor Professionals, in the retainers paid to them

15

by Debtor before the Petition Date) to pay such amounts at the time payment is required to be made:  (i) Professional Expenses that are approved for payment by order of the Court, (ii) fees required to be paid to the Clerk of the Court; and (iii) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) (the amounts described in the preceding clauses (i), (ii) and (iii) are collectively called the *"Carve-Out"); provided, however,* that no proceeds of DIP Loans or any of the Collateral and no amounts received pursuant to the Carve-Out shall be used to pay Professional Expenses of any Professional Person or any other costs incurred in connection with (1) commencing or continuing any claims, causes of actions or contested matters against any of the Lenders, including, without limitation, discovery proceedings subsequent to the commencement of any such claims or causes of action; (2) preventing, hindering or delaying performance or enforcement by DIP Lender of its rights or remedies under this Final Order or any of the DIP Financing Documents; (3) challenging the DIP Liens or Superpriority Claim of DIP Lender; or (4) any other purpose prohibited by the DIP Financing Documents.

(c)     DIP Lender may, in its sole discretion, at any time make one or more DIP Loans pursuant to the DIP Agreement to fund the Carve-Out. All such DIP Loans shall be entitled to all of the benefits and security of the DIP Financing Documents and this Final Order and shall reduce the Carve-Out to the extent of any such DIP Loans used to fund the segregated Carve-Out account. After the Carve-Out has been fully funded as and when provided under the Budget, whether from the proceeds of any Collateral or any DIP Loans funded by DIP Lender, the Carve-Out provided in Section 8(b) of this Final Order shall be satisfied and the DIP Lien and Superpriority Claim conferred upon DIP Lender shall no longer be subject and subordinate to payment of the Carve-Out; and the DIP Liens and Superpriority Claim shall attach to the Carve-Out account, but shall be subject and subordinate to the claims of Professional Persons thereto.

9.    <u>Preservation of Rights Granted Under This Final Order</u>.

(a)    There shall not be entered in this Chapter 11 case or in any successor case any order that authorizes the obtaining of credit or the incurrence of indebtedness by Debtor (or any trustee or examiner) that is (i) secured by a security, mortgage or collateral interest or lien on all or any part of the Collateral that is equal or senior to the DIP Liens or (ii) entitled to priority administrative status that is equal or senior to the Superpriority Claim granted to DIP Lender herein; <u>provided, however,</u> that nothing herein shall prevent the entry of an order that specifically provides that, as a condition to the granting of the benefits of clauses (i) or (ii) above, all of the DIP Obligations must be indefeasibly paid in full, in cash, from the proceeds of such credit or indebtedness.

(b)    If this Chapter 11 case is dismissed, converted or substantively consolidated with the cases of any of Debtor's affiliated companies, then neither the entry of this Final Order nor the dismissal, conversion or substantive consolidation of this Chapter 11 case shall affect the rights of DIP Lender under the DIP Financing Documents or this Final Order, and all of the respective rights and remedies thereunder of DIP Lender shall remain in full force and effect as if this Chapter 11 case had not been dismissed, converted, or substantively consolidated. Debtor shall not seek, and it shall constitute an Event of Default if Debtor seeks, or if there is entered, any Order dismissing this Chapter 11 case. If an order dismissing the Debtor's Chapter 11 case is entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Liens and Superpriority Claim granted to and conferred upon the DIP Lender shall continue in full force and effect and shall maintain its priority as provided in this Final Order until all DIP Obligations shall have been paid and satisfied in full (and that such DIP Liens and Superpriority Claim shall, notwithstanding such dismissal, remain binding on all

interested parties) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Liens and Superpriority Claim referred to herein.

(c)       The provisions of this Final Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any plan of reorganization or converting this Chapter 11 case from Chapter 11 to Chapter 7. In no event shall any plan of reorganization be allowed to alter the terms of repayment of any of the DIP Obligations from those set forth in the DIP Financing Documents without the written consent of DIP Lender.

(d)       The DIP Obligations shall not be discharged by the entry of any order confirming a plan of reorganization in this Chapter 11 case and, pursuant to Section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived such discharge.

(e)       In no event shall DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any Collateral securing any of the DIP Obligations; and in no event shall any DIP Liens be subject to any pre-petition or post-petition lien or security interest that is avoided and preserved for the benefit of Debtor's estate pursuant to Section 551 of the Bankruptcy Code.

10.     <u>Automatic Perfection of DIP Liens</u>. The DIP Liens shall be deemed valid, binding, enforceable and perfected upon entry of this Final Order. DIP Lender shall not be required to file any UCC-1 financing statements, mortgages, deeds of trust, security deeds, notices of lien or any similar document or take any other action (including possession of any of the Collateral) in order to validate the perfection of the DIP Liens. If DIP Lender shall, in its discretion, choose to file any such mortgages, deeds of trust, security deeds or UCC-1 financing statements, or take any other action to validate the perfection of any part of the DIP Liens, Debtor and its officers are directed to execute any documents or instruments as DIP Lender shall reasonably request, and all

18

such documents and instruments shall be deemed to have been filed or recorded on the Petition Date. DIP Lender may, in its discretion, file a certified copy of this Final Order in any filing office in any jurisdiction in which Debtor is organized or has or maintains any Collateral or an office, and each filing office is directed to accept such certified copy of this Final Order for filing and recording without the imposition of any stamp, intangibles recording or similar tax in accordance with the provisions of Section 1146 of the Bankruptcy Code.

11.    Reimbursement of Expenses. All costs and expenses incurred by DIP Lender in connection with the negotiation and drafting of the DIP Financing Documents, or any amendments thereto, the preservation, perfection, protection and enforcement of DIP Lender's rights hereunder or under the DIP Financing Documents, or in the collection of the DIP Obligations, including, without limitation, all filing and recording fees and reasonable fees and expenses of attorneys, accountants, appraisers and other professionals incurred by DIP Lender in connection with any of the foregoing, whether any of the foregoing were incurred prior to or after the Petition Date, shall form a part of the DIP Obligations and shall be paid by Debtor (subject to Court approval) in accordance with the terms of the DIP Financing Documents.

12.    Amendments to DIP Financing Documents. Debtor and DIP Lender are hereby authorized to implement, in accordance with the terms of the DIP Financing Documents, any amendments to and modifications of any of the DIP Financing Documents without further order of the Court on the following conditions: (i) the amendment or modification must not constitute a material change to the terms of the DIP Financing Documents, (ii) copies of the amendment or modification must be served upon counsel for each Committee (and, prior to the appointment of a Committee, upon Debtor's 20 largest creditors, the U.S. Trustee, and other interested parties specifically requesting such notice, and (iii) notice of the amendment is filed with the Court. Any amendment or modification that constitutes a material change, to be effective, must be approved

19

by the Court (and, for purposes hereof, a "material change" shall mean a change that operates to shorten the maturity of the DIP Obligations, increase the aggregate amount of the commitments under the DIP Facility, increase the rate of interest other than as currently provided in or contemplated by the DIP Financing Documents, add specific events of default, enlarge the nature and extent of default remedies available to DIP Lender following an event of default, or is a change that is both material and adverse to Debtor).

        13.    <u>Events of Default; Remedies</u>.

        (a)    Upon or after the occurrence of an "Event of Default" under (and as defined in) the DIP Agreement, including, without limitation, an Event of Default resulting from the failure of Debtor duly and punctually to observe, perform or discharge any obligation or duty imposed upon it by this Final Order or any of the DIP Financing Documents, the appointment of a trustee or an examiner with expanded powers (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code, the dismissal or conversion to Chapter 7 of this Chapter 11 case, the filing of a motion by Debtor to convert this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code or to dismiss this Chapter 11 case, this Final Order is altered, amended, vacated, supplemented, modified, supplemented or stayed or reversed on appeal or Debtor shall file any motion to alter, amend, vacate, supplement or modify this Final Order without DIP Lender's prior consent, or relief from stay shall be granted to allow a creditor to foreclose upon any Collateral having an aggregate book value in excess of $5,000, then, in any such event, DIP Lender shall be fully authorized, in its sole discretion, to immediately terminate further DIP Loans under the DIP Facility as provided in the DIP Agreement, to demand payment of all DIP Obligations, to hold any balances in any accounts of Debtor, and, upon five (5) days prior written notice to counsel for Debtor, counsel for each Committee and the U.S. Trustee, Debtor's right to use Cash Collateral in its possession shall

cease.  Upon or after the occurrence of an Event of Default and after providing five (5) days prior notice and copy of the applicable motion to the Debtor's counsel, the U.S. Trustee, any committee and all other parties required to be served under the Local Bankruptcy Rules, DIP Lender shall be entitled to an expedited hearing, at the Court's next available date, on an emergency motion for relief from the automatic stay enforce the DIP Liens with respect to the Collateral, to effect offsets of bank account balances and to take all other action and exercise all other remedies under the DIP Financing Documents and applicable law that may be necessary or deemed appropriate by DIP Lender to collect any of the DIP Obligations and Pre-Petition Debt, to proceed against or realize upon all or any portion of the Collateral as if this Chapter 11 case or any superseding Chapter 7 case were not pending and otherwise to enforce the DIP Financing Documents and this Final Order.

(b)    The rights, remedies, powers and privileges conferred upon DIP Lender pursuant to this Final Order shall be in addition to and cumulative with those contained in the DIP Financing Documents.

14.    <u>Monitoring of Collateral</u>.

(a)    Representatives of DIP Lender shall be authorized to visit the business premises of Debtor to inspect any Collateral and to verify or to obtain supporting details concerning the financial information to be provided to DIP Lender hereunder or under any of the DIP Financing Documents, all as permitted by the DIP Agreement.

(b)    DIP Lender shall be authorized to retain appraisers, consultants and financial advisors, at Debtor's expense, which appraisers, consultants and advisors shall be afforded reasonable access to the Collateral and Debtor's business premises, during normal business hours, for purposes of monitoring the business of Debtor, verifying Debtor's compliance

with the terms of the DIP Financing Documents and this Final Order, and (to the extent authorized by the DIP Financing Documents) appraising all or any part of the Collateral.

15.    <u>Modification of Automatic Stay</u>. The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby modified as to DIP Lender to the extent necessary to implement the provisions of this Final Order and the DIP Financing Documents, thereby permitting DIP Lender, *inter alia,* to factor the Debtor's receivables, receive proceeds and other collections of Collateral for application to the DIP Obligations as provided herein, to file or record any UCC-1 financing statements and other instruments and documents evidencing or validating the perfection of the DIP Liens and to seek expedited relief from the automatic stay, on shortened notice, upon the occurrence of an Event of Default, subject to the prior notice provisions of this Final Order.

16.    <u>Effect of Appeal</u>. Consistent with Section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Final Order are hereafter modified, vacated or stayed on appeal: such stay, modification or vacation shall not affect the validity of any obligation, indebtedness, liability or DIP Lien granted or incurred by Debtor to DIP Lender prior to the effective date of such stay, modification or vacation, or the validity, enforceability or priority of any DIP Lien, priority or right authorized or created under the original provisions of this Final Order or pursuant to the DIP Financing Documents; and any indebtedness, obligation or liability incurred by Debtor to DIP Lender under the DIP Financing Documents prior to the effective date of such stay, modification or vacation shall be governed in all respects by the original provisions of this Final Order, and DIP Lender shall be entitled to all the rights, remedies, privileges and benefits, including the DIP Liens and priorities granted herein and pursuant to the DIP Financing Documents, with respect to any such indebtedness, obligation or liability. All DIP Loans under the DIP Financing Documents are made in reliance upon this Final Order, and, therefore, the

indebtedness resulting from such DIP Loans prior to the effective date of any stay, modification or vacation of this Final Order cannot (i) be subordinated, (ii) lose the priority of the DIP Liens or superpriority administrative claim status, or (iii) be deprived of the benefit of the status of the DIP Liens and Superpriority Claim granted to DIP Lender under this Final Order or the DIP Financing Documents, as a result of any subsequent order in this Chapter 11 case, or any superseding case, of the Debtor.

17.    Deadline for Challenge to Pre-Petition Liens and Claims. Debtor has acknowledged, stipulated and agreed that the Pre-Petition Debt and all liens and security interests of Pre-Petition Lender in the Pre-Petition Collateral are legal, valid, binding, enforceable, perfected and non-avoidable, and that the Pre-Petition Debt is allowable as a claim against Debtor and that the Pre-Petition Debt is not subject to offset, counterclaim, recoupment, or equitable subordination. In consideration of DIP Lender's agreement to provide DIP Loans pursuant to the DIP Financing Documents which will be used in part to satisfy the Pre-Petition Loans, Debtor has waived and shall be barred (a) from challenging the amount, validity, extent, perfection or priority of or seeking to set aside, avoid, offset or subordinate any of the Pre-Petition Debt or any liens or security interests of Pre-Petition Lender in the Pre-Petition Collateral and (b) from asserting against Pre-Petition Lender or DIP Lender a claim under any lender liability theories or pursuant to Sections 105, 510, 544, 547, 548, 549 or 550 of the Bankruptcy Code. Notwithstanding the foregoing, the validity, extent, enforceability and perfection of the liens and security interests of Pre-Petition Lender in the Pre-Petition Collateral shall be subject only to the rights of any interested party (other than Debtor) having standing to do so to commence an appropriate adversary proceeding or contested matter objecting to the validity or amount of the Pre-Petition Debt, the DIP Loans or the extent, validity, perfection or non-avoidability of the pre-petition liens and/or the Post-Petition Liens granted pursuant to the

DIP Agreement and security interests of Pre-Petition Lender in the Pre-Petition Collateral or seeking disgorgement of all or part of the payment of the Pre-Petition Debt, which adversary proceeding or contested matter must be filed no later than 90 days after the date of entry of this Final Order. If such adversary proceeding or contested matter is not timely filed, the liens and security interests of Pre-Petition Lender in the Pre-Petition Collateral shall be deemed legal, valid, binding, enforceable, perfected and unavoidable and all of the Pre-Petition Debt component of the DIP Obligations shall be conclusive and binding upon all parties in interest in these case and in any superseding Chapter 7 case, including any subsequently appointed trustee, as a legal, valid, binding, enforceable claim that is not subject to offset, counterclaim, equitable subordination or other defense or claim.

18.    Secondary DIP Lender. All of the liens and protections granted herein to the DIP Lender shall be granted to the Secondary DIP Lender on the same terms and conditions set forth herein and shall be subordinate only to the DIP Loan.  The liens, protections, rights and remedies granted to Secondary DIP Lender shall be fully subordinate to all liens, protections, rights and remedies granted to DIP Lender, and in accordance with the terms and conditions of an Subordination and Intercreditor Agreement between DIP Lender and Secondary DIP Lender, Secondary DIP Lender shall not be permitted to enforce such liens, protections, rights or remedies until all DIP Loans have been satisfied in full

19.    No Deemed Control. By consenting to this Final Order, making DIP Loans or administering the financing relationship with Debtor pursuant to the DIP Financing Documents, DIP Lender shall not be deemed to be in control of Debtor or its operations or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, as

amended, or any similar state or federal statute) with respect to the operation or management of Debtor.

20.    <u>Binding Effect; Successors and Assigns</u>. The provisions of this Final Order shall be binding upon all parties in interest in this Chapter 11 case, including, without limitation, DIP Lender, Pre-Petition Lender, Secondary DIP Lender and Debtor and their respective successors and assigns (including any Chapter 11 trustee hereafter appointed or elected for the estate of the Debtor or any Chapter 7 trustee appointed in a superseding Chapter 7 case), and shall inure to the benefit of DIP Lender, Debtor and their respective successors and assigns. In no event shall DIP Lender have any obligation to make DIP Loans to any Chapter 7 or Chapter 11 trustee appointed or elected for the estate of Debtor.

21.    <u>Inconsistencies</u>. To the extent that any provisions in the DIP Agreement are inconsistent with any of the provisions of this Order, the provisions of this Order shall govern and control.

The Debtor, the DIP Lender / Pre-Petition Lender and the Secondary DIP Lender, by their undersigned counsel, consent and agree to the terms of this Final Order.

/s/  Michael J. Lichtenstein
Michael J. Lichtenstein, Esq.
John D. Sadler, Esq.
Shulman Rogers Gandal Pordy & Ecker, P.A.
12505 Park Potomac Avenue, Sixth Floor
Potomac, MD 20854
*Counsel for the Debtor*

/s/  Marc E. Shach
Marc E. Shach, Esq.
Weinstock, Friedman & Friedman, P.A.
Executive Centre
4 Reservoir Circle
Baltimore, MD 21208-7301
*Counsel for the Pre-Petition Lender and DIP Lender*

25

/s/  Dimitry Herman
Dimitry Herman, Esquire
Herman Law, LLC
1050 Winter Street, Suite 1000
Waltham, MA 02451
*Counsel for the Secondary DIP Lender*


Exhibits "A" and "B" as filed with the Court on January 4, 2010, Document Number 14.


**Copies to:**

Michael J. Lichtenstein, Esq.
John D. Sadler, Esq.
Shulman Rogers Gandal Pordy & Ecker, P.A.
12505 Park Potomac Avenue, Sixth Floor
Potomac, MD 20854

Marc E. Shach, Esq.
Weinstock, Friedman & Friedman, P.A.
Executive Centre
4 Reservoir Circle
Baltimore, MD 21208-7301

Michael J. Cordone, Esq.
Stradley, Ronon, Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098

Katherine A. Levin, Trial Attorney
Office of the United States Trustee
Garmatz Federal Courthouse
101 West Lombard Street, Suite 2625
Baltimore, MD  21201

Dimitry Herman, Esquire
Herman Law, LLC
1050 Winter Street, Suite 1000
Waltham, MA 02451

**END OF ORDER**